Cupp, J.,
dissenting.
{¶ 26} Because I disagree with the majority’s conclusion that Colerain Township has no “legal interest” in this declaratory-judgment action and could not be joined as a party defendant in Rumpke’s action against the state, I must dissent. The township should have been joined as a party in this declaratory-judgment action under Civ.R. 19(A).
{¶ 27} This case began when Rumpke sued to invalidate the General Assembly’s amendment to R.C. 519.211 in 2008. The version of R.C. 519.211(A) prior to the 2008 amendment read:
{¶ 28} “Except as otherwise provided in division (B) or (C) or this section, sections 519.02 to 519.25 of the Revised Code confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business.” Sub.S.B. No. 107, 151 Ohio Laws, Part I, 475.
*48 (¶ 29} That version of R.C. 519.211 was silent regarding whether privately-owned solid-waste facilities were “public utilities” and exempt from township zoning. The 2008 amendment to R.C. 519.211 clarified this ambiguity. A new sentence added to R.C. 519.211 expressly provided that privately owned solid-waste facilities did not qualify as “public utilities” that would be exempt from local zoning. The amendment ensured that a township had authority to regulate, control, and enforce land use by entities such as Rumpke that were operating within township boundaries.[1] 2008 Am.Sub.H.B. No. 562, section eff. Sept. 23, 2008.
{¶ 30} Just prior to the effective date of the amended version of R.C. 519.211, Rumpke filed suit to challenge the 2008 legislation on the grounds that the amendment was unconstitutional as a violation of the one-subject rule of the Ohio Constitution. Rumpke requested a declaration that the amendment to R.C. 519.211 was unconstitutional and an injunction “enjoining the amendments * * * from taking effect.” The township sought to intervene in Rumpke’s action against the state (the “intervention case”).
{¶ 31} The township does not seek to intervene in this matter merely because it claims an abstract interest in Rumpke’s constitutional challenge to amended R.C. 519.211. The township’s interest in this case is directly tied to other pending and preexisting litigation that Rumpke instituted against the township. That other litigation arose from the township’s denial of Rumpke’s request to rezone 350 acres to use for additional landfill operations in 2006 (the “zoning case”). In the zoning case, Rumpke claimed that the township’s zoning resolutions were unconstitutional as applied to its property and constituted a taking without just compensation. That claim alone would not have provided the township with sufficient legal interest to entitle it to intervene in the present matter. However, Rumpke further argued in the already pending zoning case that at the time of the township’s decision in the zoning case in 2006, Rumpke was already a “public utility” within the meaning of the version of R.C. 519.211 then in effect and was therefore exempt from the township’s zoning regulations. From the record available to us, it appears that litigation in the zoning case has been stayed by the appellate court pending the outcome of this present matter.[2]
*49 {¶ 32} The township’s interest in this intervention case is that the result of the preexisting zoning case directly affects each party’s legal position within that preexisting and pending case. In the zoning case, Rumpke has directly challenged the application of the existing zoning law to it by newly asserting its status as a public utility for zoning purposes — the very issue that the intervention case affects. Rumpke’s challenge to the township’s zoning authority in the zoning case raises a significant legal issue because, according to the township, Rumpke is only now, after 40 years of submitting to the township’s zoning resolution, asserting that it is not subject to the township’s zoning resolution. Consequently, the township’s authority to enforce its zoning resolution is squarely at issue in both the zoning case and in the intervention case.
{¶ 33} The presence of the same issues in both the intervention and zoning cases, and the interdependence of those issues on the two cases, substantiates the township’s legal interest in this intervention case consistently with the joinder rule of Civ.R. 19(A). This provision provides that a person “shall be joined as a party in the action if * * * (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest.”
{¶ 34} The township has sufficiently demonstrated that its absence from the intervention case impairs its ability to protect its interest in maintaining its authority to regulate, control, and enforce land use within its boundaries. This is particularly true because it appears that Rumpke initiated the present case as a new and separate case from the already pending zoning action purposefully as a way to litigate the public-utility issue without the township’s opposing participation and as a way to gain a strategic advantage in the zoning ease. Despite the differing legal theories, these two cases involve related aspects of the same issues. Consequently, the township should be permitted to join as a party to assert its important legal interest in the present case ultimately challenging whether Rumpke is a public utility.
{¶ 35} Colerain Township’s interest in this case is clearly different from the interest of townships generally. The presence and interdependence of the same issues in both the preexisting zoning case and this intervention case give Colerain Township a specific, unique interest in the intervention case that is distinguishable from that of other township within the state. Permitting the township to intervene in this case would create no “unmanageable litigation,” as the majority asserts. Rather, it would simply permit an entity that has a legal interest that would be affected in the proceedings to protect that interest.
{¶ 36} For the foregoing reasons, I dissent.
Brown, C.J., and Lundberg Stratton, J., concur in the foregoing opinion.
*50 Keating, Muething & Klekamp, P.L.L., Joseph L. Trauth Jr., Thomas M. Tepe Jr., and Charles M. Miller, for appellee.
Brahm & Cunningham, L.L.C., Richard C. Brahm, Catherine A. Cunningham, and Aaron M. Glasgow, for appellants.
Michael H. Cochran, urging reversal on behalf of amici curiae, Township Association and Coalition of Large Ohio Urban Townships.

. {¶ a} The amendment added a new sentence to the end of R.C. 519.211(A):
{¶ b} “As used in this division, ‘public utility’ does not include a person that owns or operates a solid waste facility or a solid waste transfer facility, other than a publicly owned solid waste facility or a publicly owned solid waste transfer facility, that has been issued a permit under Chapter 3734. of the Revised Code or a construction and demolition debris facility that has been issued a permit under Chapter 3714. of the Revised Code.”

. The case is Rumpke Sanitary Landfill, Inc. v. Colerain Twp., Hamilton C.P. No. A 0703073; 1st Dist. No. C-090223.